**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| TAMMIE MICHELLE ESQUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV29 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Tammy Michelle Esque, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I. PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging a disability onset date of October 15, 2006. (Tr. 190-96.) Upon denial of that application initially (Tr. 67-73, 86-89) and on reconsideration (Tr. 74-85, 95-102), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 103-04). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 34-66.) The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 18-29.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 184-89), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

1.    [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2011.

2.    [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of October 15, 2006 through her date last insured of December 31, 2011.

3.    Through the date last insured, [Plaintiff] had the following severe impairments: impingement syndrome of the left shoulder with arthroscopic subacrominal [sic] decompression; dermatitis; irritable bowel syndrome; allergic rhinitis; and history of mitral valve prolapse.[1]

---

[1]    The ALJ found that Plaintiff's irritable bowel syndrome ("IBS") constituted a "severe impairment[];" however, in the narrative discussion beneath that finding, the ALJ observed that Plaintiff's IBS "improved with treatment," and that Plaintiff suffered no "associated significant limitations in her ability to do basic work activities." (Tr. 23.) The ALJ then found Plaintiff's IBS a "non-severe impairment." (Id.) That conflict entitles Plaintiff to no relief. See generally Fisher v. Bowen, 869 F.3d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."). First, Plaintiff did not raise the ALJ's conflicting findings regarding Plaintiff's IBS in the memorandum in support of her instant motion. (See Docket Entry 11.) Second, the ALJ discussed Plaintiff's IBS symptoms and treatment as part of the ALJ's RFC determination (see Tr. 25-26), and credited the opinion of the state agency medical consultant at the reconsideration level of review that limited Plaintiff to no more than light exertional work, in part, due to her IBS (see Tr. 27, 81-82).

. . .

4.   Through the date last insured, [Plaintiff] did not
have an impairment or combination of impairments that met
or medically equaled the severity of one of the listed
impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [T]hrough the date last insured, [Plaintiff]
had the residual functional capacity to perform light
work . . . except that [Plaintiff] could perform frequent
climbing of stairs and ramps; occasional climbing of
ropes, ladders and scaffolds; frequent balancing,
crouching, stopping, kneeling, and crawling; and
occasional overhead reaching with the left upper
extremity and frequent reaching in all other directions
with the left upper extremity.  She needed to avoid
concentrated exposure to work place hazards.  She could
perform frequent handling and feeling with the bilateral
upper extremities. [Plaintiff] could perform simple,
routine, repetitive tasks involving no more than simple,
short instructions and simple work-related decisions with
few work place changes.  She could have frequent contact
with supervisors, coworkers and the public.

. . .

6.   Through the date last insured, [Plaintiff] was
unable to perform any past relevant work.

. . .

10. Through the date[] last insured, considering
[Plaintiff's] age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined
in the . . . Act, at any time from October 15, 2006, the
alleged onset date, through December 31, 2011, the date
last insured.

(Tr. 23-29 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

4

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2

_____

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

(4th Cir. 1999).[3]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at

_____

[3] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's assessment of [Plaintiff's] symptom severity fail[ed] to comply with Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ('SSR 16-3p')]" (Docket Entry 11 at 4 (underscoring omitted));

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

2) "the ALJ's decision failed to sufficiently explain the RFC as required under [Social Security Ruling 96-8p, _Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims_, 1996 WL 374184 (July 2, 1996) ('SSR 96-8p')]" (Docket Entry 11 at 8 (capitalization, underscoring, and single-spacing omitted));

3) "the RFC does not adequately reflect [Plaintiff's] limitations in concentration, persistence, or pace [('CPP')]" (_id._ at 13 (capitalization, underscoring, and single-spacing omitted)); and

4) "the ALJ did not address apparent conflicts between the vocational testimony and [the _Dictionary of Occupational Titles_ ('_DOT_')]" (_id._ at 17 (capitalization, underscoring, and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 4-24.)

### 1. Evaluation of Symptom Severity

Plaintiff's first assignment of error contends that "[t]he ALJ's assessment of [Plaintiff's] symptom severity fail[ed to comply with] SSR 16-3p." (Docket Entry 11 at 4 (underscoring omitted).) According to Plaintiff, under _Mascio v. Colvin_, 780 F.3d 632, 639 (4th Cir. 2015), an ALJ's use of boilerplate in evaluating a claimant's symptom reporting "is insufficient, but its use may be harmless if the ALJ properly analyzed [the claimant's

subjective symptoms] elsewhere." (Docket Entry 11 at 5.) Here, Plaintiff maintains that the ALJ's use of boilerplate qualifies as prejudicial error, because "[t]he ALJ did not specify which testimony she found to be not fully credible[, ]provide legally sufficient reasons, supported by substantial evidence in the record, to support that determination . . . [or] link her conclusions to any specific inconsistencies" (id. at 4-5). Plaintiff further alleges that "the ALJ's expressed reasoning indicates that she relied solely on objective medical evidence to discount [Plaintiff's] subjective complaints" (id. at 5), and "neglected to discuss the extent of [Plaintiff's] ability to engage in activities of daily living" (id. at 6), as well as "the 'location, duration, frequency, and intensity' of [Plaintiff's] pain" (id. at 7 (quoting 20 C.F.R. § 404.1529(c)(3)(ii))). Those contentions fail to carry the day.

SSR 16-3p and the Commissioner's regulations provide a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. § 404.1529. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically

determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8.  In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision."  (Tr. 25.)

Plaintiff first asserts that the ALJ's use of the above-quoted boilerplate qualifies as prejudicial error under Mascio, because "[t]he ALJ did not specify which testimony she found to be not fully credible[, ]provide legally sufficient reasons, supported by substantial evidence in the record, to support that determination . . . [or] link her conclusions to any specific inconsistencies" (id. at 4-5).  However, a review of the ALJ's decision belies all three of those assertions.

As an initial matter, Plaintiff's reliance on <u>Mascio</u> misses
the mark. (<u>See</u> Docket Entry 11 at 5.) That decision found
erroneous an ALJ's reliance on the "boilerplate" language that "the
claimant's statements concerning the intensity, persistence and
limiting effects of his symptoms are not credible to the extent
they are inconsistent with the above [RFC] assessment," holding
that such language "gets things backwards" by implying that the ALJ
first determined the RFC, and then used the RFC to decide the
claimant's credibility. <u>Mascio</u>, 780 F.3d at 639. The ALJ here,
however, did not use that forbidden language in assessing
Plaintiff's symptom reporting. (<u>See</u> Tr. 25.) Moreover, the ALJ
labored under no obligation to "specify which testimony she found
to be not fully <u>credible</u>" (<u>id.</u> at 4 (emphasis added)), because, as
Plaintiff later acknowledged, "[c]redibility is no longer a
consideration under SSR 16-3p" (<u>id.</u> at 5).[6]

More significantly, the ALJ's decision makes clear which of
Plaintiff's statements the ALJ found consistent with the record.
For example, because the ALJ found that Plaintiff remained capable

---

[6] Effective March 28, 2016, the Social Security Administration superseded
Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI:
Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an
Individual's Statements</u>, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), with SSR
16-3p. The new ruling "eliminat[es] the use of the term 'credibility' from . . .
sub-regulatory policy, as [the] regulations do not use th[at] term." SSR 16-3p,
2017 WL 5180304, at *2. The ruling "clarif[ies] that subjective symptom
evaluation is not an examination of the individual's character," <u>id.</u>, and
"offer[s] additional guidance to [ALJs] on regulatory implementation problems
that have been identified since [the publishing of] SSR 96-7p," <u>id.</u> at *2 n.1.

13

of performing light work, which entails up to six hours of standing and/or walking in a work day, see Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work - the Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *6 (1983), the ALJ clearly found Plaintiff's statements that "she can only sit for 20-30 minutes comfortably, and stand for 10-20 minutes" (Tr. 25; see also Tr. 51-52) inconsistent with the record. In contrast, the ALJ's summation paragraph demonstrates that she found consistent with the record Plaintiff's statements "that from 2006 to 2011, she could do more cleaning, vacuuming, and taking basic care of the home," and that "she just gave up" between 2011 and 2015, when "she was not getting significant treatment and did not seek emergency treatment." (Tr. 27; see also Tr. 49, 51.)

The ALJ's decision also contains several examples of inconsistencies between Plaintiff's statements and the record. For instance, despite Plaintiff's testimony that her stomach problems kept her from working (see Tr. 25, 45), the ALJ noted that "[r]ecords show that [Plaintiff's] abdominal pain had improved with [IBS] medication treatment" (Tr. 25). Similarly, although Plaintiff testified that she could not work, in part, due to aggressive osteoarthritis (see Tr. 25, 45-46), the ALJ observed that "[a]n October 2009 cervical MRI showed no significant disc bulge or central canal stenosis" (Tr. 26; see also Tr. 291), Plaintiff "testified to having shoulder improvement after surgery"

in December 2009 (Tr. 26; see also Tr. 47-48), and "January 13, 2011 records show that on physical examination, [Plaintiff's] hands and wrists had no obvious deformity[, s]he had full [active and] passive range of motion of the wrists and fingers . . . [and] reasonable pinch and grip strength and palpable pulses" (Tr. 26; see also Tr. 356). In the same vein, the ALJ remarked that, despite Plaintiff's testimony "that she experiences anxiety, and that she has had symptoms associated with post-traumatic stress disorder since childhood" (Tr. 26; see also Tr. 48-49, 56-59), Plaintiff "did not receive any significant mental health treatment until several years after her date last insured" (Tr. 26).

Plaintiff further alleges that "the ALJ's expressed reasoning indicates that she relied solely on objective medical evidence to discount [Plaintiff's] subjective complaints" (Docket Entry 11 at 5), and "neglected to discuss the extent of [Plaintiff's] ability to engage in activities of daily living" (id. at 6), as well as "the 'location, duration, frequency, and intensity' of [Plaintiff's] pain" (id. at 7 (quoting 20 C.F.R. § 404.1529(c)(3)(ii))). Again, the ALJ's decision undermines Plaintiff's assertions. The discussion above makes clear that the ALJ did consider the location, duration, frequency, and intensity of Plaintiff's alleged symptoms. Moreover, the ALJ's summation paragraph reflects that he discussed the extent of Plaintiff's treatment and her ability to engage in daily activities:

15

> In sum, the [ALJ] considered but granted little probative weight to [Plaintiff's] testimony regarding the severity of her impairments as the medical evidence of record dated between the alleged onset date and the date last insured is generally not supportive of her allegations. Although [Plaintiff] described daily activities which are fairly limited, these limitations appear to be associated with her abilities several years after the date last insured of December 31, 2011. In fact, [Plaintiff] testified that from 2006 to 2011, she could do more cleaning, vacuuming, and taking basic care of the home, than she can do now. Further, the treatment records are very sparse between 2011 and 2015. [Plaintiff] explained that she just "gave up." While she took prescribed medications during this time, she was not getting significant treatment and did not seek any emergency treatment. Finally, [Plaintiff] testified to significant mental health issues, including symptoms associated with post-traumatic stress disorder since childhood; but, medical records dated between the alleged onset date and date last insured show minimal mental health treatment.

(Tr. 27 (emphasis added).) The ALJ also noted that multiple records reflected that Plaintiff continued to work as a dog groomer during the relevant period. (See Tr. 26; see also Tr. 286, 322, 379, 395, 498, 500, 501.)

In short, Plaintiff has not demonstrated error with respect to the ALJ's evaluation of Plaintiff's symptom reporting.

## 2. RFC

Next, Plaintiff maintains that "the ALJ's decision failed to sufficiently explain the RFC as required under SSR 96-8p." (Docket Entry 11 at 8 (capitalization, underscoring, and single-spacing omitted).) In particular, Plaintiff contends that the ALJ failed to conduct a function-by-function explanation of Plaintiff's mental abilities in violation of SSR 96-8 and Mascio. (See id. at 8-9.)

According to Plaintiff, "[t]he ALJ failed to apply the required psychiatric review technique" at steps two and three of the SEP, and "offered no discussion of the [mental] limitations . . . in the RFC" (id. at 9), despite "mental health evidence during the period at issue to be discussed" (id. at 10 (citing Tr. 322 , 325, 333, 336, 395, 465, 487)).  Regarding the physical RFC, Plaintiff challenges the ALJ's decision to afford partial weight to the state agency consultant's opinions, because the ALJ failed to identify which of the consultant's opinions the ALJ credited and which she rejected.  (See id. (citing Tr. 27).)  Additionally, Plaintiff contends that "the ALJ never explained how she concluded . . . that [Plaintiff] could actually perform the tasks required by 'light work,' such as lifting up to 20 pounds at a time, frequently lifting or carrying up to 10 pounds, or standing or walking for six hours."  (Id. at 11 (citing SSR 83-10).)  Those arguments provide no basis for relief.

RFC measures the most a claimant can do despite any physical and mental limitations.  Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a).  An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain.  See Hines, 453 F.3d at 562-63; 20 C.F.R. § 404.1545(b).  The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very

heavy).  <u>See</u> 20 C.F.R. § 404.1567.  Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level.  <u>See</u> 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination.  <u>See, e.g.</u>, <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998); <u>Diaz v. Chater</u>, 55 F.3d 300, 307 (7th Cir. 1995). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion."  <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000).  As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996 WL 374184, at *1.

The United States Court of Appeals for the Fourth Circuit recently addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand.  <u>Mascio</u>, 780 F.3d at 636–37. Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," <u>Mascio</u>, 780

F.3d at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

The ALJ here did not err in her evaluation of Plaintiff's ability to perform mental work-related functions. At step two of the SEP, the ALJ did not find that Plaintiff suffered from any mental impairments, whether severe or non-severe, during the relevant period (see Tr. 23; see also Tr. 27 (reflecting ALJ's statement that she "did not find evidence that [Plaintiff] had severe mental disorders prior to the date last insured")) and, therefore, the regulations did not require the ALJ to complete the psychiatric review technique, see 20 C.F.R. § 404.1520a (providing that technique applies when ALJ finds a claimant has "a medically determinable mental impairment").

Plaintiff's contention that the ALJ "offered no discussion of the [mental] limitations . . . in the RFC" (Docket Entry 11 at 9), despite "mental health evidence during the period at issue to be discussed" (id. at 10 (citing Tr. 322, 325, 333, 336, 395, 465, 487)) fares no better. Although transcript page 465 documents that a clinician described Plaintiff on January 6, 2006, as "an extremely depressed appearing female with a very flat affect and

19

minimal interaction," that encounter occurred over nine months prior to Plaintiff's onset date, and Plaintiff did not request (or receive) any mental health treatment at that time or at any other time during the relevant period. (Tr. 465.) Transcript pages 322 and 325 reflect a gastroenterologist's notation of Plaintiff's "flat affect and depressive mood" on June 30, 2009, and July 2, 2009, respectively, but do not indicate that Plaintiff sought (or received) any treatment for a mental condition. (Tr. 322, 325.)[7] The record at page 487 simply shows an emergency room visit on March 17, 2010, for low blood pressure and lightheadedness, evidencing normal mental status. (See Tr. 487.) Page 395 of the record evidences Plaintiff's complaints on September 1, 2010, of situational stress and anxiety arising out of her family relationships and the need to quit her job as a dog groomer because of allergies, as well as her statement that "she was never depressed." (Tr. 395 (emphasis added).) Moreover, despite the ALJ's finding that Plaintiff's mental impairments post-dated the relevant period, the ALJ signaled that she gave Plaintiff the benefit of the doubt by "generously includ[ing] some mental health limitations in the [RFC] determination." (Tr. 27.) Simply put, Plaintiff has not shown that the ALJ mishandled the mental limitations in the RFC.

_____

[7] Pages 333 and 336 of the transcript merely duplicate pages 322 and 325. (Compare Tr. 322, 325, with Tr. 333, 336.)

20

Concerning the physical limitations in the RFC, Plaintiff's argument that the ALJ failed to identify which of the state agency medical consultant's opinions the ALJ credited and which she rejected misses the mark. (See Docket Entry 11 at 10 (citing Tr. 27).) The ALJ's evaluation of the consultant's opinion makes abundantly clear the opinions the ALJ adopted and those she did not:

> As for the opinion evidence, the [ALJ] gives partial weight to the [state agency medical consultant's] opinion that [Plaintiff] can perform a limited level of light work including limited left overhead reaching and bilateral handling and fingering. However, the [ALJ] did not see support for limits with fumes, odors, dusts and gases, and the [ALJ] did not find evidence that [Plaintiff] had severe mental disorders prior to the date last insured.

(Tr. 27 (internal citation omitted).)

Plaintiff contends that "the ALJ never explained how she concluded . . . that [Plaintiff] could actually perform the tasks required by 'light work,' such as lifting up to 20 pounds at a time, frequently lifting or carrying up to 10 pounds, or standing or walking for six hours" (Docket Entry 11 at 11 (citing SSR 83-10)), and improperly "reli[ed] on vague references" to unidentified portions of Plaintiff's testimony, "objective evidence," and "reasons explained in the decision" (id. at 12 (citing Tr. 25-27)). However, as discussed above, the ALJ found Plaintiff's statements, which included her testimony that she could lift only five pounds (see Tr. 52), not entirely consistent with the evidence of record

(see Tr. 25), and supported the analysis of Plaintiff's symptom reporting with substantial evidence.  Moreover, the ALJ credited the state agency medical consultant's opinion that Plaintiff remained able to perform the lifting, carrying, standing, and walking requirements of light work.  (See Tr. 27, 81-82.)  That evidence provides "an accurate and logical bridge from the evidence to [the] conclusion," Clifford, 227 F.3d at 872.

Accordingly, Plaintiff's second issue on review fails as a matter of law.

### 3. CPP

In Plaintiff's third assignment of error, she asserts that "the RFC does not adequately reflect [her] limitations in [CPP]." (Docket Entry 11 at 13 (capitalization, underscoring, and single-spacing omitted).)  More specifically, Plaintiff maintains that, because "the ALJ did not find a severe mental impairment" (id. (citing Tr. 23)), she failed to explain how and based on what evidence she concluded that [Plaintiff] [wa]s limited to simple, routine, repetitive tasks [("SRRTs")] involving no more than simple, short instructions and simple work-related decisions with few work place changes" (id.).  Further, Plaintiff contends that, under Mascio, the mental limitations in the RFC "conflate the complexity level of the work with [Plaintiff's] impaired ability to focus on and continue with a task on a sustained basis" and "do not reflect [Plaintiff's] deficits in [CPP]."  (Id. at 15 (referencing

<u>Mascio</u>, 780 F.3d at 638).)  Plaintiff's contentions fail to warrant relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]."  <u>Mascio</u>, 780 F.3d at 638.  However, the ALJ in <u>Mascio</u> found, at steps two and three of the SEP, that the claimant suffered from <u>severe</u> adjustment disorder which resulted in <u>moderate</u> limitation in CPP, and yet, from a mental standpoint, included only a restriction to unskilled work in the RFC.  <u>Id.</u> at 638.  The Fourth Circuit then observed as follows:

> Perhaps the ALJ can explain why [the claimant's] <u>moderate</u> limitation in [CPP] at step three does not translate into a limitation in [the claimant's RFC].  For example, the ALJ may find that the [CPP] limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE].  But because the ALJ here gave no explanation, a remand is in order.

<u>Id.</u> (emphasis added) (internal citation omitted).

In contrast, at step two, the ALJ here did <u>not</u> find that Plaintiff suffered from <u>any</u> mental impairments, whether severe or non-severe, during the relevant period (<u>see</u> Tr. 23; <u>see also</u> Tr. 27 (reflecting ALJ's statement that she "did not find evidence that [Plaintiff] had severe mental disorders prior to the date last insured")) and, therefore, did not complete the psychiatric review technique or assess <u>any</u> limitation in CPP (let alone a <u>moderate</u>

limitation) (see Tr. 24).  Under such circumstances, the CPP-based

holding in Mascio simply does not apply.

Plaintiff additionally argues that "the ALJ failed to explain

how and based on what evidence she concluded that [Plaintiff] [wa]s

limited to [SRRTs] involving no more than simple, short

instructions and simple work-related decisions with few work place

changes."  (Docket Entry 11 at 13.)  However, as discussed above,

despite the ALJ's finding that Plaintiff's mental impairments post-

dated the relevant period, the ALJ gave Plaintiff the benefit of

the doubt by "generously includ[ing] some mental health limitations

in the [RFC] determination."  (Tr. 27.)  Moreover, Plaintiff has

not shown how the ALJ's inclusion of more restrictions in the RFC

than supported by the record prejudiced her in any way.  See Hines

v. Berryhill, No. 7:16-CV-276-BO, 2017 WL 4079399, at *2 (E.D.N.C.

Sept. 13, 2017) (unpublished) (finding "ALJ ha[d] sufficiently

explained the basis for the RFC finding and remand under Mascio

[wa]s not required," where "ALJ noted that he did not find [the]

plaintiff to be credible regarding her [mental] limitations . . .

and that he gave her the benefit of the doubt in limiting her to

unskilled work").

Plaintiff's third issue on review therefore fails.

### 4. Conflict Between the VE's Testimony and the DOT

In Plaintiff's last issue on review, she contends that "the

ALJ "did not address apparent conflicts between the [VE's]

testimony and the [DOT]" in violation of Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), and Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015). (Docket Entry 11 at 17 (capitalization, underscoring, and single-spacing omitted).) According to Plaintiff, the VE's testimony that an individual with Plaintiff's mental RFC can perform the jobs of Mail Clerk (DOT No. 209.687-026, 1991 WL 671813 (4th ed. rev. 1991)), Shipping-and-Receiving Weigher (DOT No. 222.387-074, 1991 WL 672108)), and Folder (DOT No. 369.687-018, 1991 WL 673072)) (see Tr. 63) conflicts with the DOT's assignment of Reasoning Development Level ("RDL") 3 to the Mail Clerk and Shipping-and-Receiving Weigher jobs, and RDL 2 to the Folder job. (See Docket Entry 11 at 18-19 (citing Henderson v. Colvin, 643 F. App'x 273, 276-77 (4th Cir. 2016), Adkins v. Berryhill, No. 1:15-CV-000001-RLV, 2017 WL 1089194, at *3-4 (W.D.N.C. Mar. 21, 2017) (unpublished), Walker v. Berryhill, No. 5:17-CV-90, 2018 WL 709976, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished), and Christopherson v. Colvin, Civ. No. 6:15-4725, 2016 WL 7223283, at *9 (D.S.C. Nov. 18, 2016) (unpublished)).) Those arguments ultimately fall short.

25

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an <u>apparent unresolved conflict</u> between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," <u>Pearson</u>, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ <u>independently</u> must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," <u>id.</u> at 209 (emphasis added); <u>see also</u> <u>id.</u> (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).

As relevant to the instant case, the ALJ queried the VE whether an individual limited to "[SRRTs] involving no more than simple short instructions, [] simple work-related decisions with few work place changes[, and] . . . frequent contact with supervisors, coworkers, or the public," could perform any jobs existing in significant numbers in the national economy. (Tr. 62-

63.)  In response, the VE opined that such an individual would remain capable of performing the jobs of Mail Clerk, Shipping-and-Receiving Weigher, and Folder, and provided the corresponding <u>DOT</u> codes for the three jobs, as well as their incidence in the national economy.  (<u>See</u> Tr. 63.)  The ALJ then asked the VE if her testimony harmonized with the <u>DOT</u>, and the VE responded that "[t]he [<u>DOT</u>] d[id] not directly address overhead reaching," and that she "base[d] [her testimony regarding overhead reaching] on [her] training, education, and knowledge of how jobs are performed in the labor market."  (<u>Id.</u>)[8]

The ALJ subsequently adopted the VE's testimony as to Plaintiff's ability to perform the three jobs in question:

> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled light occupational base, through the date last insured, the [ALJ] asked the [VE] whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC].  The [VE] testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as follows, in the following numbers:

| Job Title | [DOT] Code | SVP | Exertion | Number of Jobs |
|---|---|---|---|---|
| Mail [C]lerk | 209.687-026 | 2 | Light | 74,700 |
| [Ship/Rec] Weigher | 222.387-074 | 2 | Light | 80,000 |
| Laundry [F]older | 369.687-018 | 2 | [L]ight | 99,300 |

---

[8] Although Plaintiff's counsel cross-examined the VE regarding the impact of time off-task and monthly absences on the available jobs, she did not query the VE regarding the jobs' RDLs.  (<u>See</u> Tr. 65.)

> Pursuant to SSR 00-4p, the [ALJ] has determined that the [VE's] testimony is consistent with the information contained in the [DOT].
>
> Based on the testimony of the [VE], the [ALJ] concludes that, through the date last insured, considering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.

(Tr. 28 (emphasis added).)

As an initial matter, Plaintiff mistakenly relies on Henderson, as the facts of that case differ in a material way from the circumstances of the instant case. A job's RDL reflects the degree of analytical ability required by the job, with the levels arranged in ascending order of complexity from level 1 to level 6. See generally DOT, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development (GED)"), 1991 WL 688702. A job with RDL 1 entails the abilities to "[a]pply commonsense understanding to carry out simple one- or two-step instructions . . . [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." Id. (emphasis added). In Henderson, because the ALJ limited the claimant to one to two step instructions (matching RDL 1), the jobs cited by the VE rated at RDL 2 would require, at a minimum, an ability to understand instructions more complex than one to two step instructions. See Henderson, 643 F. App'x at 276-77. Because the ALJ did not solicit an explanation from the VE or

28

otherwise resolve that conflict in <u>Henderson</u>, the Fourth Circuit remanded. <u>Id.</u> at 277-78. Here, however, the ALJ limited Plaintiff to SRRTS involving simple, short instructions, which require more mental ability than the one to two step instructions in <u>Henderson</u>. Accordingly, <u>Henderson</u> does not compel the Court to find an apparent conflict between the limitation to SRRTs and simple, short instructions in this case and either RDL 2 or 3.

Plaintiff also relies on <u>Adkins</u> for the proposition that "'an apparent conflict [exists] between a restriction for [SRRTs] and a claimant's ability to perform an occupation requiring [RDL] 3.'" (Docket Entry 11 at 19 (quoting <u>Adkins</u>, 2017 WL 1089194, at *4).) Thus, according to Plaintiff, the mental RFC's limitation to SRRTs involving short, simple instructions conflicts with the RDL of 3 required by the Mail Clerk and Shipping-and-Receiving Weigher jobs, which "requires the ability to '[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic format.'" (<u>Id.</u> (quoting <u>DOT</u>, App'x C, § III, 1991 WL 688702).)

As recognized by another judge of this Court, "[t]he Fourth Circuit has not addressed this question, which means that there is no binding precedent dictating a particular result in this matter." <u>Mullis v. Colvin</u>, No. 1:11CV22, 2014 WL 2257188, at *1 (M.D.N.C. May 29, 2014) (unpublished) (Osteen, Jr., C.J.). To further complicate matters, a conflict on this issue exists among the

district courts of the Fourth Circuit. See Mullis v. Colvin, No. 1:11CV22, 2014 WL 575722, at *10 & n.11 (Feb. 11, 2014) (unpublished) (Webster, M.J.) (collecting cases), recommendation adopted, 2014 WL 2257188 (M.D.N.C. May 29, 2014) (unpublished) (Osteen, Jr., C.J.). The majority of rulings on this issue by judges of this Court have held that an apparent conflict exists between a limitation to SRRTs and jobs requiring an RDL of 3. See, e.g., Dunn v. Berryhill, No. 1:17CV507, 2018 WL 3383421, at *4 (M.D.N.C. July 11, 2018) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Oct. 26, 2018) (Eagles, J.); Mullis, 2014 WL 2257188, at *1; Weaver v. Colvin, No. 1:10CV582, 2013 WL 3989561, at *12-13 (Aug. 2, 2013) (unpublished) (Webster, M.J.), recommendation adopted, 2013 WL 4768178 (M.D.N.C. Sept. 5, 2013) (unpublished) (Eagles, J.).

Even assuming that the ALJ erred by failing to resolve an apparent conflict between the VE's testimony that an individual limited to SRRTs involving simple, short instructions could perform the jobs of Mail Clerk and Shipping-and-Receiving Weigher and the DOT's assignment of RDL 3 to those jobs, any such error by the ALJ would qualify as harmless, because the third job cited by the VE, i.e., Folder, requires only an RDL of 2, DOT No. 369.687-018, 1991 WL 673072. See generally Fisher v. Bowen, 869 F.3d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a

perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."). However, Plaintiff asserts that the RDL of 2 required by the Folder job conflicts with the mental RFC's limitation to SRRTs involving simple, short instructions, because RDL 2 entails "the ability to carry out 'detailed' instructions." (Docket Entry 11 at 19 (referencing <u>DOT</u>, App'x C, § III, 1991 WL 688702).) Plaintiff cites decisions from two other district courts in the Fourth Circuit that have found an apparent conflict between an RDL of 2 and an RFC limitation to either one to three step instructions or SRRTs. (<u>Id.</u> at 19 (citing <u>Walker</u>, 2018 WL 709976, at *5 (one to three step instructions), and <u>Christopherson</u>, 2016 WL 7223283, at *9 (SRRTs)).)

Although <u>Walker</u> and <u>Christopherson</u> both found apparent conflicts involving RDL 2, the majority of post-<u>Henderson</u> district court cases within the Fourth Circuit, including two recent decisions from other judges of this Court, have found no apparent conflict between RDL 2 and SRRTs, <u>see</u> <u>Collins v. Berryhill</u>, No. 1:17CV224, 2018 WL 278667, at *5 (M.D.N.C. Jan. 3, 2018) (Webster, M.J.) (unpublished) ("Plaintiff's limitation to unskilled work that is simple, routine, and repetitive in nature with routine changes in the work environment is not inconsistent with [RDL 2] jobs."), <u>recommendation adopted</u>, slip op. (M.D.N.C. Jan. 25, 2018) (Eagles, J.); <u>Lawrence v. Berryhill</u>, No. 1:16CV1310, slip op. at 5-6

31

(M.D.N.C. Nov. 17, 2017) (Webster, M.J.) (unpublished) ("The majority of courts that have considered this issue have concluded, either explicitly or implicitly, that a limitation to SRRTs is not inconsistent with the performance of [RDL 2]." (collecting cases)), recommendation adopted, slip op. (M.D.N.C. Dec. 20, 2017) (Eagles, J.); Testamark v. Berryhill, No. 3:16CV202 (REP), 2017 WL 4544899, at *11 (E.D. Va. Aug. 21, 2017) (unpublished) ("[T]he ALJ limited Plaintiff to simple, routine tasks consistent with the detailed yet uninvolved instructions involved in positions requiring [RDL] 2. Had the record supported an RFC that restricted [the p]laintiff to no more than one-to two-step instructions, like the claimant in Henderson, then an apparent conflict would have existed for the ALJ to address. But [the p]laintiff's case presents no such conflict. Thus, the ALJ discharged her responsibility when she asked the VE about the consistency between his opinion and the [DOT]. Because no apparent conflict existed — and not merely because the VE testified that none existed — the ALJ did not need to obtain further explanation."), recommendation adopted, 2017 WL 4544893 (E.D. Va. Oct. 11, 2017) (unpublished); Roundtree v. Berryhill, No. 4:15-CV-00154-F, 2017 WL 398368, at *3 (E.D.N.C. Jan. 30, 2017) (unpublished) (deeming Henderson "distinguishable" and finding no apparent conflict between SRRTs and RDL 2).

As no apparent conflict existed between the RFC's limitation to SRRTs involving simple, short instructions and the RDL of 2

required by the Folder job, and the ALJ adopted the VE's testimony that a significant number of Folder jobs, i.e., 99,300, existed in the national economy (<u>see</u> Tr. 28, 63), Plaintiff's fourth and final assignment of error demonstrates no basis for reversal or remand.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security or Remanding the Cause for a Rehearing (Docket Entry 10) be denied, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 28, 2018